Pernell W. McGuire
State Bar No. 015909
**Law Office of Pernell W. McGuire, P.L.L.C.**
528 W. Aspen, Suite 1
Flagstaff, AZ 86001
(928) 779-1173
(928) 779-1175 (facsimile)
pmcguire@pmcguirelaw.com
Attorney for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 11 |
| EUGENE R. RICCI | No. 2:BK-08-05287-RTBP |
| Debtor. | |

## DEBTOR'S DISCLOSURE STATEMENT
### DATED January 22, 2009

I.    INTRODUCTION TO DISCLOSURE STATEMENT

        1.1    Purpose of This Disclosure Statement.

        On May 7, 2008 debtor commenced this chapter 11 proceeding for the purpose of protecting the estate's interest in its principal assets: the debtor's interest in certain real property located at 222 W. Gurley Street, Prescott, Arizona, and 1577 Plaza West Drive, Prescott, Arizona, as well as the debtor's ownership interest in two corporations, National All American dba ERA National Realty of AZ, and K & B Associates dba Flo-Dor Manufacturing.

        This Disclosure Statement has been approved by order of the Bankruptcy Court, dated _____ as containing information of a kind and in sufficient detail to enable a hypothetical reasonable investor typical of the holders of claims against or interests in the debtor to make an informed judgment about the Debtor's Plan.  The Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.  The purpose of this Disclosure Statement is to provide the holders of claims against or interests in the Company with adequate information about the Company and the Plan to make an informed judgment about the merits of approving the Plan.

        1.2    The Debtor's Plan.

        **THE DEBTOR'S PLAN ACCOMPANIES THIS DISCLOSURE STATEMENT AS EXHIBIT A.  THE READER IS URGED TO REVIEW THE DEBTOR'S PLAN CAREFULLY IN CONJUNCTION WITH THIS DISCLOSURE STATEMENT.  IF THERE IS ANY CONFLICT BETWEEN THE PROVISIONS OF**

**THIS DISCLOSURE STATEMENT AND THOSE OF THE DEBTOR'S PLAN, THE PROVISIONS OF THE PLAN SHALL CONTROL.**

    1.3    <u>The Voting Process and Deadline</u>.

    A ballot accompanies this Disclosure Statement for use in voting on the Debtor's Plan. **To vote to accept or to reject the Plan, creditors and interest holders of the Debtor in any of the impaired classes should indicate their acceptance or rejection of the Plan and otherwise complete the Ballot which pertains to the Plan.** See the "Summary of Plan" contained herein and the Classification and Treatment of Claims and Interests" contained in the copy of the Plan attached hereto to determine whether you are a member of an impaired class. **Any creditor or equity holder holding claims in more than one impaired class must file separate Ballots for each such class.** Additional Ballots may be obtained by written request to the Debtor's lawyer, Pernell McGuire of The Law Office of Pernell W. McGuire, 528 W. Aspen Ave. Flagstaff AZ 86001, (9829) 779-1173.

    You are urged to fill in, date, sign and promptly process your Ballot or Ballots. **Please be sure to properly complete the form and to legibly identify the name of the claimant or interest holder.** The holders of claims and interests may vote on the Plan by filling out and filing the accompanying Ballot for Accepting or Rejecting the Debtor's Plan with:

    Clerk of the U.S. Bankruptcy Court
    230 N. First St. Suite 101
    Phoenix, AZ 85003

with a copy mailed to:

    Law Office of Pernell W. McGuire
    528 W. Aspen Ave., Suite 1

Flagstaff AZ, 86001

**SIGNED AND COMPLETED BALLOTS MUST BE RECEIVED AND FILED, NOT MERELY MAILED, ON OR BEFORE 4:00 P.M. _____.** SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THAT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED. ANY BALLOTS RECEIVED OR FILED AFTER THAT DATE MAY BE EXCLUDED FROM THE CALCULATION TO DETERMINE WHETHER THE CREDITORS AND INTEREST HOLDERS OF A PARTICULAR CLASS HAVE VOTED TO ACCEPT OR TO REJECT THE DEBTOR'S PLAN.

 1.4     The Importance of Your Vote

As a creditor or interest holder your vote is important. The Plan can be confirmed by the Court if it is accepted by the holders of ***two-thirds in amount*** and more than ***one-half in number*** of claims in each impaired class of claims voting on the Plan, and if it is accepted by the holders of two-thirds in amount of interests in each impaired class of equity interests voting on the Plan. In the event the requisite acceptances are not obtained, the Court may nevertheless confirm the Plan if the Court finds that it accords fair and equitable treatment to the class or classes rejecting it.

 1.5     The Confirmation Process

After the votes are tallied, the Court will hold a hearing on the confirmation of the Plan and may enter a Confirmation Order if it finds that the requirements for confirmation have been met.

LAW OFFICE OF
PERNELL W.
MCGUIRE

If the required acceptance of one or more impaired classes of claims or interests is not obtained, § 1129(b)(1) of the Bankruptcy Code nevertheless permits the Bankruptcy Court to confirm the Plan upon request of the Debtor, if the Court finds that the Plan does not discriminate unfairly against and accords fair and equitable treatment to the impaired class or classes rejecting it and that the Plan otherwise meets the requirements for confirmation.

At the hearing on confirmation of the Plan, the Bankruptcy Court will hear any timely filed objections from a party in interest to confirmation of the Plan.

### 1.6   Confirmation Hearing

**The Bankruptcy Court has set _____, 2009, at _____o'clock a.m/p.m. for a hearing on confirmation of the Debtor's Plan.**

### 1.7   Binding Effect of Plan

If the Court confirms the Plan, each creditor or interest holder will be bound by the terms of and the treatment set forth in the Plan.

## II.   DEFINITIONS

1.   Defined Terms.  In addition to any terms defined elsewhere in the Disclosure Statement or Plan the following terms have the indicated meanings:

Allowed Claim.  A claim that (i) is liquidated and has been scheduled as undisputed, or (ii) for which a proof of claim has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

Allowed Interest.  An interest that (i) has been scheduled as undisputed, or (ii) for which a proof in interest has been filed that has not been objected to or that has been objected to but has been allowed by the Court.

Bankruptcy Code.  Title 11 of the United States Code.

Bankruptcy Court.  The United State Bankruptcy Court for the District of Arizona.

Confirmation Date.  The date on which the Court enters the Confirmation Order.

**Confirmation Order**.  The order of the Court confirming the Plan.

**Debtor**.  Eugene R. Ricci

**Distribution**.  The cash to be distributed under the Plan to the holder of Allowed Claims and Allowed Interests.

**Disbursing Agent**.  The Debtor, or any other entity designated by the Debtor to act in such capacity.

**Effective Date**.  The first business day following the date upon which the Confirmation Order has become final and non-appealable with no appeal then pending, **except that** the Debtor will have the right to treat this date as having occurred under any circumstances which would moot any such appeal.

**Insider**.  Any person or entity defined as an insider in Section 101 of the Bankruptcy Code.

**Plan**.  The Debtor's Plan of Reorganization, together with any modifications thereto as may be filed by the proponent of the Plan.

**Pro-Rata**.  Proportionately so that the ratio of the amount of consideration distributed on account of an Allowed Claim in a particular class to the amount of consideration distributed on all Allowed Claims in the same class, is the same as the ratio of the amount of that Allowed Claim to all Allowed Claims in the same class.

**Reorganized Debtor**.  The Debtor following confirmation, as reorganized by this Plan.

2.  **Undefined Terms**.  A term used but not defined herein, but that is defined in the Bankruptcy Code, has the meaning given to that term in the Bankruptcy Code.

III.  **HISTORY AND EVENTS LEADING TO THE CHAPTER 11 FILING**

Eugene Ricci is a 50% shareholder of National All American, Inc. dba ERA National Realty of Arizona, a Real Estate Firm located in Prescott Arizona, and a 50% shareholder in K & B Associates dba Flo-Dor  Manufacturing Inc., a manufacturer of chimney caps, located in Paulden, Arizona.  Mr. Ricci has owned and operated ERA National Realty of Arizona for the past two years and Flo-Dor Manufacturing for the past nine years.

Mr. Ricci also owns a 50% interest in the real property located at 222 W. Gurley Street, Prescott, Arizona (the "Gurley Street Property"), and 1577 Plaza West Drive,

Prescott, Arizona (the "Plaza West Property"). In March, 2006, Mr. Ricci and his business partner Robert Nicoletti purchased Era Realty, and the Gurley Street Property from J.T. Purvis. In connection with the purchase of the real estate and business, Mr. Nicoletti and Mr. Ricci borrowed approximately $1,360,000 from Summit Bank and Mr. Purvis carried back two separate promissory notes secured by the Gurley Street Property, in the amount of $350,000 and $1,560,000 respectively.

Due to the unprecedented decline in the value of real estate, the frequency of real estate sales, and the lack of access to credit, the revenues generated by ERA Realty decreased. As a result, the debtor was unable to service the note payments due to Purvis, who commenced a trustee's sale against the Gurley Street Property. In order to preserve the debtor's interest in the Gurley Street Property and his interest in ERA Realty, the debtor commenced this chapter 11 proceeding.

3.1     Events Precipitating this Case.

The debtor purchased his interest in ERA Realty in March 2006, just as the real estate market crashed. Prior to the purchase, ERA Realty had annual gross commissions of approximately $5 Million in 2005. For 2008, gross commissions had dropped to less than $1 Million dollars. In connection with the purchase of ERA Realty, the debtor also purchased a 50% interest in the building where ERA Realty is located for $1,600,000.

3.2     Actions Taken by Debtor Post-Petition.

Since the filing of this case, the debtor has worked to increase the profitability of his two companies. With respect to ERA Realty, the debtor has cut expenses to a minimum.

LAW OFFICE OF
PERNELL W.
MCGUIRE

With respect to Flo-dor, the debtor has negotiated new contracts leading to creation of revenues commencing in January 2009, which revenues will be used to help fund the debtor's plan of reorganization.

## IV.   ADMINISTRATIVE EXPENSES

The debtor has incurred certain administrative expenses in connection with this matter.   The Law Office of Pernell W. McGuire P.L.L.C. (PWM) represents the debtor. Prior to the filing of this case, PWM received $4,000.00 from the Debtor in connection with this case.   Approximately $3,489.00 of that amount was used in connection with services rendered in preparing for the filing of this case.   Currently, $511.00 of the retainer remains in trust for the Debtor.   The debtor estimates current attorney's fees in the amount of $12,900.04, and that additional fees in the approximate amount of $7,500.00 will be incurred in connection with plan confirmation.

## V.   MANAGEMENT INFORMATION

Eugene Ricci is the Vice President of both National All American Inc. and K & B Associates.

## VI.   FINANCIAL INFORMATION

6.1   Assets.

The Debtor has assets consisting of real and personal property.  The debtors property is listed in Schedules A and B of its Schedules. which is attached hereto as Exhibit B.

6.2   Liabilities.

Administrative Claims

Law Office of Pernell W. McGuire (est.)          $ 17,500.00

LAW OFFICE OF
PERNELL W.
MCGUIRE

| | |
|---|---|
| United States Trustee Fee | $  650.00 |

Secured Claims

| | |
|---|---|
| Bank of America | $     17,113.26 |
| Bank of Marin | $   150,000.00 |
| Cougar Mountain Ventures, LLC | $       7,350.27 |
| James T. and Jonna M. Purvis | $   300,000.00 |
| Lamb 401k Trust | $   681,035.31 |
| National City Mortgage Company | $   279,214.76 |
| Summit Bank | $1,318,266.25 |
| Wachovia Mortgage | $   762,363.00 |
| Yavapai County Treasurer | $     12,476.99 |

| | |
|---|---|
| General Unsecured Liabilities | $222,555.26 |

| | |
|---|---|
| American Express | $3,050.00 |
| American Express | $16,270.00 |
| American Express | $14,552.00 |
| Bank of America | $9,676.00 |
| Capital One | $30,078.00 |
| Chase | $30,694.63 |
| Chase | $9,936.00 |
| Chase | $12,196.00 |
| Chase | $27,520.00 |
| Citi Cards | $13,002.00 |
| Discover Card | $11,730.31 |
| Discover Card | $14,023.32 |
| Discover Card | $7,434.00 |
| First Equity Visa | $8,793.00 |
| Sears Gold Mastercard | $13,600.00 |

| | |
|---|---|
| Total Estimated Liabilities | $5,373,732.43 |

**FOR PURPOSES OF PLAN COMPUTATION, ALL OBLIGATIONS OF THE VARIOUS CREDITORS LISTED IN THE SCHEDULES IN THIS DISCLOSURE STATEMENT AND PLAN SHOULD BE CONSIDERED AS ESTIMATES ONLY AND ALL CLAIMS ARE CONSIDERED DISPUTED AS TO THE AMOUNT UNLESS SUPPORTED BY A TIMELY FILED PROOF OF CLAIM (AND IF OBJECTION THERETO IS FILED BY DEBTOR FOLLOWING RESOLUTION BY THE BANKRUPTCY COURT AS TO AMOUNT OF THE CLAIM), OR IF THE CLAIM HAS BEEN SCHEDULED AS UNDISPUTED, FIXED**

**AND LIQUIDATED. ALL CREDITORS' CLAIMS NOT SUPPORTED BY TIMELY FILED PROOF OF CLAIM OR SCHEDULED AS UNDISPUTED, FIXED AND LIQUIDATED, MAY BE EXCLUDED FROM PLAN COMPUTATIONS AND DISTRIBUTIONS UNDER THE PLAN OR AT DEBTOR'S OPTION, INCLUDED AT THE AMOUNTS OR VALUES LISTED HEREIN.**

VII.    LIQUIDATION ANALYSIS.

In order to arrive at a judgment on whether or not to vote for or against the Plan, a creditor or other party in interest needs to have an understanding of the consequences that would be realized if the Debtor's estate were liquidated pursuant to Chapter 7 of the Bankruptcy Code.

In the instant case, it is anticipated if the Debtor's estate were liquidated and the assets sold pursuant to a Chapter 7 liquidation, the sale of the Property would be accomplished at prices far less than the fair market value than if sold in a non-liquidation setting. In that event, although the prices obtained by a Chapter 7 Trustee would be difficult to anticipate with certainty, it is highly likely that insufficient funds could be generated to pay all creditors in full, and in all likelihood unsecured creditors would not be paid at all. The amounts listed represent the debtor's estimate of cash realized from the sale of each asset indicated. Below is a summary liquidation analysis as estimated by the Debtor:

Sample Chapter 7 Scenario

Available Assets in Chapter 7

Proceeds from Sale of Real Property

| Property Address | Scheduled Value | Liquidation Value | Liens | Net Proceeds |
|---|---|---|---|---|
| 1577 Plaza West | $1,050,000.00 | $800,000.00 | $700,766 | $50,000      x |

LAW OFFICE OF
PERNELL W.
MCGUIRE

| | | | | 50% interest $25,000.00 |
|---|---|---|---|---|
| 222 W. Gurley | $1,600,000.00 | $1,360,000.00 | $3,150,000 | $0.00 |
| 2620 W. Live Oak | $950,000.00 | $807,500.00 | $762,000 | $45,500 (exempt) |
| 833 San Anselmo | $850,000.00 | $600,000.00 | $429,000.00 | $170,000.00 |
| Newport Timeshare | $20,000.00 | $17,000.00 | $0.00 | $17,000.00 |
| Total Proceeds available to pay unsecured creditors | | | | $212,000.00 |

Proceeds from sale of Personal Property

| Property Description | Scheduled Value | Liquidation Value | Liens/Exempt | Net Proceeds |
|---|---|---|---|---|
| 1939 Chevrolet Sedan | $40,000 | $20,000.00 | $40,000.00 | $0.00 |
| 1950 Cadillac | $5,000.00 | $2,500.00 | $0.00 | $2,500.00 |
| 1971 Alfa Romeo | $8,000.00 | $4,000.00 | $0.00 | $4,000.00 |
| 1997 Harley | $7,420.00 | $4,000.00 | $0.00 | $4,000.00 |
| 1998 Cadillac Eldorado | $7,225.00 | $3,500.00 | $0.00 | $3,500.00 |
| 2000 Harley | $8,920.00 | $6,000.00 | $0.00 | $3,920.00 |
| 2002 Cadillac | $11,840.00 | $7,000.00 | $5,000 | $2,000.00 |
| 2005 12 foot open trailer | $1,500.00 | $500.00 | $0.00 | $500.00 |
| 2005 GMC Pickup | $24,710.00 | $17,000.00 | $17,113.00 | $0.00 |
| Artwork | $2,500.00 | $500.00 | $0.00 | $500.00 |
| Audio Equip. | $1,400.00 | $500.00 | $0.00 | $500.00 |
| Coin Collection | $400.00 | $250.00 | $0.00 | $250.00 |
| Crystal | $5,000.00 | $2,500.00 | $0.00 | $2,500.00 |
| Jewelry | $20,000.00 | $5,000.00 | $1,000.00 | $4,000.00 |
| Knives | $20,000.00 | $5,000.00 | $0.00 | $5,000.00 |
| Gun Collection | $20,000.00 | $10,000.00 | $0.00 | $10,000.00 |
| Stamp Collection | $500.00 | $250.00 | $0.00 | $250.00 |
| Total Available to Pay Unsecured Creditors | | | | $43,420.00 |

Cash On Hand                                        $13,000.00

Total Proceeds Available In
Chapter 7 Liquidation for Unsecured Creditors        $  268,420.00

Comparison of Percentage Recovery                    Chapter 7    Chapter 11

LAW OFFICE OF PERNELL W. MCGUIRE

Class 1  Administrative Fees
    $ 25,000.00 (Chapter 7 Trustee Fees)
    $20,500.00 (Attorney's Fees)         100%         100%

Class 2 Lamb 401k Trust
    $681,635.31         100%         100%

Class 3 Secured Claim of Yavapai County
    $12,476.79_____         100%         100%

Class 4  Cougar Mountain
    $7,350.27         100%         100%

Class 5 Bank of America
    $17,113.20         100%         100%

Class 6 National City Mortgage
    $279,214.76         100%         100%

Class 7 Bank of Marin
    $150,000.00         100%         100%

Class 8 Wachovia
    $762,363.00         100%         100%

Class 9 Summit
    $1,318,266.25_____         100 %         100%

Class 10 Purvis
    $300,000.00         23%         100%

Class 11 General Unsecured Creditors     27%         27%
    $1,079,555.000 (includes deficiency balance of Purvis
    Claim and ½ of Purvis Limited Partnership claim)

      The liquidation analysis assumes Chapter 7 trustee's fees based upon the fees recoverable under 11 U.S.C. § 326.  The liquidation analysis further assumes chapter 11 attorney's fees incurred thus far would be paid from the chapter 7 estate. Finally, the claims for each creditor are estimates provided by the debtor.  Certain of the unsecured claims may be disputed.  Depending on the outcome of objections to such claims the percentage amount recovered by the holders of an allowed unsecured claim might increase.

VIII.   <u>SUMMARY OF PLAN</u>

      The following is a summary of the Plan.  However, members of voting classes are

strongly urged to read this Disclosure Statement in its entirety prior to voting on the Plan. The dollar amounts have been calculated as described in Section VI above, but are subject to adjustment depending upon the actual proofs of claim received, or in the case of secured claims, valuations conducted pursuant to 11 U.S.C. § 506, in connection with the confirmation process.

    8.1   <u>Allowed Classes</u>.

| | |
|---|---|
| Class 1 - Administrative Expenses<br>Attorneys' Fees ($17,500.00)<br>U.S. Trustee's Fees ($650.00) | $ 18,150.00 |
| Class 2 Lamb 401k Trust | $681,635.31 |
| Class 3 Secured Claim of Yavapai County | $12,476.79 |
| Class 4 Cougar Mountain | $ 7,350.27 |
| Class 5 Bank of America | $17,113.26 |
| Class 6 National City Mortgage | $279,214.76 |
| Class 7 Bank of Marin | $150,000.00 |
| Class 8 Wachovia | $762,363.00 |
| Class 9 Summit | $1,318,266.25 |
| Class 10 Purvis | $300,000.00 |
| Class 11 General Unsecured Creditors | $1,079,555.000 |

Classes 2 – 11 are impaired. Class 1, an administrative class, will not vote on this Plan.

    8.2   <u>Operation of Plan</u>.

A. The Plan shall commence on the Effective Date, and continue in duration for ten (10) years, or until all payments provided for herein are completed. During this

period, the Reorganized Debtor will continue with the operation of the estate's business interests, and will be entitled to utilize all cash in his possession for the necessary costs of maintaining and operating the Debtor's assets.

B.     The Class 1 administrative expenses pertaining to professionals will be satisfied on the Effective Date, or as soon thereafter as practicable from estate funds upon order of the Bankruptcy Court following notice to creditors and hearing.  Any unpaid quarterly fees to the United States Trustee will be satisfied in full on the Effective Date.  Any other administrative expenses including taxes and/or trade payables will be paid with cash on hand as of the Effective Date.  The U.S. Trustee Fees will continue to be paid quarterly pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed.

C.     The Class 2 secured claim of Lamb 401k Trust in the aggregate amount of $681,635.31 plus accrued interest at the non default contract rate of interest will be paid within 9 months from the Effective Date from the net proceeds from the sale of the Plaza West Property.  In the event the Plaza West Property has not been sold by that date, the Lamb 401k Trust, upon motion to the Bankruptcy Court may seek an order terminating the automatic stay to proceed with foreclosure.

D.     The Class 3 and 4 secured claims will be paid upon the sale of the real property located at 1577 Plaza West Drive, Prescott, AZ 86301.  The class 3 and 4 claimant shall be paid principal plus interest at the rate of 16% per annum.

E.     The Class 5 Allowed Secured Claim of Bank of America shall be repaid beginning on the 5th of the month following the Effective Date of the Plan the amount of $17,113.26 (less adequate protection payments) with interest at the rate of 5% per annum

LAW OFFICE OF
PERNELL W.
MCGUIRE

in 60 equal monthly installments of $322.95.

F.     The Class 6 Allowed Secured Claim of National City Mortgage shall be repaid beginning on the 5th of month following the Effective Date of the Plan the sum of $279,214.00 with interest at the rate of 5.25% per annum in 360 equal installments of $1,546.17.

G.     The Class 7 Allowed Secured Claim of Bank of Marin shall be repaid beginning on the 5th of month following the Effective Date of the Plan the sum of $150,000.00, plus attorney's fees and costs of approximately $1,000, in accordance with the existing terms and conditions of the promissory note dated August 20, 2007.

H.     The Class 8 Allowed Secured Claim of Wachovia Bank shall be repaid beginning on the 5th of month following the Effective Date of the Plan in the amount of $762,363.00 on the same terms and conditions as the parties existing loan documents.  Any accrued interest shall be capitalized and added to the principal balance of the loan..

I.     Commencing on the 25th of the month following the Effective Date of the Plan, the debtor shall pay the principal portion of the Class 9 secured claim of Summit Bank (approximately $1,318,000) with interest at the rate of 6.5% per annum, and the accrued interest, late fees, and other charges existing as of the Effective Date (without interest, approximately $80,000.00), amortized over twenty (25) years with all amounts due and payable ten years from the Effective Date.  All other terms of the parties' loan documentation shall remain the same.

J.     Commencing on the 25th of the month following the Effective Date of the Plan, the debtor shall pay the Class 10 secured claim of J.T. Purvis the sum of

LAW OFFICE OF
PERNELL W.
MCGUIRE

$300,000.00 with interest at the rate of 6.5% per annum amortized over twenty five (25) years with all amounts due and payable ten years from the Effective Date.  All other terms of the parties' loan documentation shall remain the same.

K. Commencing on the 10th of the first full month following 180 days from the Effective Date of the Plan, the class 11 Allowed Unsecured Claims shall be paid the sum of $268,420.00 plus interest at the rate of 4% per annum in 120 monthly installments of $2,717.00.  The amount proposed represents what creditors would receive in the event of a chapter 7 liquidation and exceeds what the debtor would be required to pay under 11 U.S.C. 1129(a)(15).

L. The holder of any claim to which an objection has been made prior to or on the date on which the first payment to the holder of such a claim is made, shall not be entitled to receive any distribution otherwise attributable to that claim until the objection has been resolved by order of the Court.  Any distribution which would otherwise accrue to the benefit of the holder of an Allowed Claim prior to resolution of an objection shall be held by the Debtor in a segregated account and upon resolution of the objection either paid to the claimholder or returned to the estate, as appropriate, in light of the Court's resolution of the objection.  In the event a claim is reduced voluntarily by the claimholder or by ruling of the Court following objection by the Debtor or any other party in interest, the Debtor may at its option continue to make payments in the monthly amounts specified in this Disclosure Statement and the Plan of Reorganization until the reduced claimholder has received all amounts to which it is entitled, or alternatively, reduce the monthly amount payable on behalf of the reduced claim (and all claims of the same class) so that the claims are paid

within the time specified in the Disclosure Statement and Plan of Reorganization. This option to decrease the monthly payment but pay for the full term specified in the Plan or maintain the monthly payment and reduce the term over which such payments must be paid, shall be within in the sole discretion of the Debtor and the exercise of his reasonable business judgment.

M.     At any time during the duration of this Plan, the Debtor reserves the right to sell all or any part of his property interests provided the remaining assets and/or the value received upon sale permits the full distributions required by the Plan. In such event, the Reorganized Debtor will retain any surplus funds following distribution in full to eligible classes.

N.     All undisputed taxes generated by any step of the operation of this Plan, or accruing during the operation of this Plan, will be considered administrative expenses to be satisfied as they accrue.

**THE DEBTOR BELIEVES THAT THE PLAN DESCRIBED HEREIN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO CREDITORS AND EQUITY SECURITY HOLDERS. THE DEBTOR THEREFORE BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITOR AND INTEREST HOLDER, AND RECOMMENDS THAT EACH CLASS VOTE TO ACCEPT THE PLAN.**

IX.     <u>TAX CONSEQUENCES OF PLAN</u>

In 1978, a massive revision of the bankruptcy laws was enacted as the Bankruptcy

Code now in effect. In turn, the impact of the Bankruptcy Code on the existing tax laws led to the enactment of the Bankruptcy Tax Act of 1980, P.L. 96-589, 94 Stat. 3389 (1980). This Act made a number of significant changes in the law, relating inter alia, to how the bankruptcy estate is taxed, whether the occurrence of the bankruptcy will interrupt the Debtor's taxable year, whether income and deductions belong to the Debtor or the estate, and whether individual losses are available to the estate.

It is believed by the Debtor herein that the implementation of the Plan would have no tax consequences aside from those normally flowing from operation of the Debtor. However, any tax analysis is subject to significant uncertainties because of a variety of factors, including changes made by the Tax Reform Acts of 1984 and 1986; differences in the nature of claims of the various claimants, their taxpayer status and methods of accounting; and any prior treatment of the claimants with respect to their claims. In addition, no assurance can be given that legislative, judicial or administrative changes in the law will not be forthcoming which would materially impact the Debtor herein and/or its creditors. Any such changes could be retroactive with respect to transactions entered into or completed prior to the enactment or promulgation thereof.

## **CAUTION**

The Debtor cautions that any tax analysis is subject to significant uncertainties because of a variety of factors, including changes made by the Tax Reform Acts of 1984 and 1986; differences in the nature of claims of the various claimants, their taxpayer status and methods of accounting; and any prior treatment of the claimants with respect to their claims. In addition, no assurance can be given that legislative, judicial or administrative changes in

LAW OFFICE OF
PERNELL W.
MCGUIRE

the law will not be forthcoming which would materially impact the Debtor herein and/or its creditors. Any such changes could be retroactive with respect to transactions entered into or completed prior to the enactment or promulgation thereof.

**CLAIMANTS ARE ADVISED TO CONSULT WITH THEIR TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED IN THIS PLAN, INCLUDING STATE AND LOCAL TAX CONSEQUENCES.**

X.    EXECUTORY CONTRACTS/UNEXPIRED LEASES

None.

XI.    DESCRIPTION OF REORGANIZED DEBTOR

11.1    Formation of Reorganized Debtor.  The Reorganized Debtor is the Debtor or its successors and/or assigns, following reorganization through confirmation of this Plan.

11.2    Structure and Operation of Reorganized Debtor.  The Plan of Reorganization has no effect on the structure, management or operation of the Reorganized Debtor.

11.3    Projection of Income and Expenses.  A projection of income and expenses upon which this Plan is based is appended hereto in Exhibit "C." Exhibit Cis a projection of the Debtor's expected income and expenses for the debtor.  The economic assumptions underlying this Plan are set forth below.  All financial information reported by the company is done on an accrual basis.

Net Revenue.  From the projected income and expenses, it is anticipated that the revenue available to fund the Plan can be calculated as set forth on Exhibit "C".  The total available to fund the distributions would also include cash on

hand at the confirmation date. For purposes of these projections, it is assumed that the first year following the Effective Date will be the balance of calendar year 2009.

11.4 <u>Assumptions</u>. In addition to the economic assumptions set forth in the projections attached as Exhibits to the Disclosure Statements, there are a number of other assumptions upon which this Plan is based:

A. It is assumed that the Debtor has, or will have, sufficient funds on hand on the Effective Date of the Plan to pay administrative expenses as reflected herein and retain an initial capital reserve so that all revenues projected may be used to make distributions to creditors.

B. It is assumed that the Debtor will be able to achieve its target revenues.

XII. <u>COMPLIANCE WITH BANKRUPTCY CODE</u>.

In order to confirm the Plan, the Bankruptcy Court must make a series of determinations concerning the Plan, including those set forth, infra. The Debtor believes that each of these conditions has been met and will seek rulings of the Bankruptcy Court to this effect at the confirmation hearing.

In addition, the Bankruptcy Code also requires that the Plan be accepted by requisite votes of holders of claims and interest. If any member of an impaired class does not accept the Plan, the Bankruptcy Court must find that confirmation of the Plan is in the "best Interests" of such entities.

12.1 <u>Classification of Claims and Interest</u>. The Bankruptcy Code requires that a plan of reorganization place each creditor's claim and each holder of an interest in a class

with other claims or interest that are "substantially similar."  The Debtor believes that the Plan's classification system meets the Bankruptcy Code standard.

12.2    Section 1111(b) Election.  Section 1111(b) of the Bankruptcy Code provides that as a general rule, a secured claim is to be accorded a treatment in the Chapter 11 Plan that is the same as would be received if it were a recourse claim, regardless of whether or not the claim is non-recourse by agreement or applicable law.  Section 1111 also provides an opportunity for a partially secured creditor whose claim is treated by the proposed Plan of Reorganization as partially secured and partially unsecured to acquiescence in such bifurcation of their claim or, alternatively, to elect to treat the claim as fully secured.  In this case, Debtor has not treated any creditor as partially secured.

12.3    Technical Requirements.  To be confirmed, the contents of a plan must comply with the technical requirements of Chapter 11 of the Bankruptcy Code, which the Debtor believes to have been done.

12.4    Good Faith.  To be confirmed the Bankruptcy Court must find that the Debtor has proposed the Plan in good faith.  In the instant case that requirement is met, since the Plan contemplates a bona fide reorganization in which the creditors will be paid an amount on behalf of their claims that is greater than would be received through liquidation or conversion to a Chapter 7 proceeding.

12.5    Disclosure.  The Bankruptcy Court must find that the Debtor's disclosures concerning the Plan have been adequate and have included information concerning all payments made or promised in connection with the Plan and the bankruptcy case, as well as the identity, affiliations and compensation to be paid to all officers, directors and other

insiders. The Debtor believes this requirement to have been met by the Disclosure Statement.

12.6 _Feasibility_. The Plan may not be confirmed if the Bankruptcy Court finds that confirmation is likely to be followed by the liquidation of the Reorganized Debtor or the need for further financial reorganization. The Debtor believes that it will be able to perform its obligations under the Plan and continue to operate its business without further reorganization, all as set forth herein.

12.7 _Best Interests_. Notwithstanding acceptance of the Plan by creditors and interest holders impaired under the Plan, if a claimant or interest holder does not accept the Plan, then the Bankruptcy Court must independently determine that the Plan is in the best interests of that claimant's or interest holder's class. To meet this test, the Bankruptcy Court must determine that each claim or interest in the impaired class will receive under the Plan, as of the Effective Date, property of a value at least equal to the value that each such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. A liquidation analysis is contained in Section V of this Plan, from which it can be seen that the foregoing condition is met.

XIII. VOTING/CONFIRMATION/ALTERNATIVES

13.1 _Voting_. A creditor may vote either to accept the Plan or to reject the Plan. Only the votes of impaired classes will be counted in connection with confirmation of the Plan, since classes of claims and interests which are not impaired are deemed to have accepted the Plan. In determining acceptance of the Plan, votes will be counted only if submitted by a party with an Allowed claim or an Allowed Interest, and the ballot for voting

on the Plan does <u>not</u> constitute a proof of claim for this purpose. A claim to which an objection has been filed is not an Allowed Claim unless and until the Bankruptcy Court haws ruled on the objection, and although holders of disputed claims will receive ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such claim for purposes of voting on the Plan.

13.2 <u>Confirmation</u>. In order for the Plan to be approved, it must either (i) be accepted by at least two-third in amount and more than one-half in number of the creditors of each impaired class, or (ii) be approved by the Court as being in the best interest of all parties in spite of failure to receive the required votes of creditors in any particular class (i.e. "cram-down").

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of two-thirds in dollar amount and a majority in number of claims of that class, counting only those members of the class who actually vote. The Bankruptcy Code defines acceptance of a plan by a class of interests (equity securities) as acceptance by two-thirds of the number of shares, counting only those shares actually voted.

Classes of claims and interests that are unimpaired under the Plan are conclusively deemed to have accepted the Plan. A class of creditors or interest holders is unimpaired if the Plan (i) does not alter the legal, equitable or contractual rights between the Debtor and the creditor or interest holder (with the exception of reinstating the claim by curing any defaults), or (ii) pays the claimant the full amount of the claim or interest by cash payment on the Effective Date. Classes of claim and interests that receive no distribution under the Plan are deemed to have rejected the Plan. Consequently, ballots are being sent only to

LAW OFFICE OF
PERNELL W.
MCGUIRE

those classes which are impaired but are to receive a distribution under the Plan.

The Plan may be confirmed by the Bankruptcy court even if it is not accepted by all classes of impaired claim, as long as at least one impaired class of claims has accepted.

If a class of secured claims rejects the Plan, it may still be confirmed so long as it provides that (i) the lien securing the claims of members of the class is to be left in place and the holders of the claim will receive deferred cash payments of a present value equal to the lesser of the amount of such claims or the value of the collateral securing such claims, (ii) that the collateral securing the claims be sold free of the lien with the lien attaching to the proceeds and with such lien on the proceeds being treated under one of the two other standard described in this paragraph, or (iii) a treatment for the claim that it is the "indubitable equivalent" of the claim.

If a class of unsecured claims rejects the Plan, it may still be confirmed so long as it provides that (i) each holder of a claim included in the rejecting class receives or retains on account of the claim, property that has a value, as of the Effective Date, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled and the value of such interest; or (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property at all.

13.3    Alternative To Confirmation.   In the event this Plan is not confirmed, the Chapter 11 proceeding can be (i) continued for the submission of other plans, (ii) converted to Chapter 7, or (iii) dismissed.  In the event the Plan is not confirmed through acceptance of the claimholders, it is the Debtor's intention to seek confirmation through cram-down.

LAW OFFICE OF
PERNELL W.
MCGUIRE

13.4    Cram-Down

If the debtor fails to achieve confirmation of a consensual plan pursuant to 11 U.S.C. § 1129(a), it may nevertheless achieve confirmation by "cram-down" if it satisfies the requirements of § 1129(b).  To achieve confirmation, under this section, the debtor must show that its Plan (1) satisfies all the requirements of section 1129(a), excluding 1129(a)(8); (2) does not discriminate unfairly; (3) is fair and equitable with respect to each impaired class that has not accepted the plan; and (4) is accepted by at least one impaired noninsider class.  See 11 U.S.C. § 1129(b)(1).

XIV.   INFORMATION/REPRESENTATIONS

14.1    Source of Information.  Unless otherwise stated, all of the information contained herein is based on information supplied by the Debtor or its agents, and no representations concerning the Debtor are authorized by the Debtor other than as set forth in this Disclosure Statement.

14.2    Conflicts.  To the extent any information set forth in this Disclosure Statement conflicts with any information set forth in the Debtor's schedules or statement of financial affairs, this Disclosure Statement will govern and will, to the extent necessary, constitute an amendment to the affected schedules or statement of financial affairs.

14.3    Unauthorized Representations.  Any representations or inducements made to secure acceptance other than as contained in this Disclosure Statement should not be relied upon arriving at a decision, and such representations and inducements should be reported to counsel for Debtor, who, in turn, shall deliver such information to the Court for appropriate action.

LAW OFFICE OF
PERNELL W.
MCGUIRE

14.4    _Disclaimer_.

NO REPRESENTATIONS CONCERNING THE DEBTOR OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN.  YOU SHOULD NOT RELY ON ANY REPRESENTATIONS OR INDUCEMENTS TO ACCEPT THE PLAN OTHER THAN THOSE CONTAINED HEREIN.

AN ACCOUNTANT HAS NOT REVIEWED OR APPROVED THE INFORMATION CONTAINED HEREIN.  MUCH OF THE INFORMATION CONTAINED HEREIN WAS DERIVED FROM THE DEBTOR OR THE DEBTOR'S RECORDS AND HAS NOT BEEN VERIFIED FROM INDEPENDENT SOURCES.  THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE DEBTOR'S BEST KNOWLEDGE, INFORMATION, AND BELIEF.

THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN.  THE COURT'S APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

Dated this 22nd day of January, 2009

LAW OFFICE OF PERNELL W. MCGUIRE

1        /s/ Pernell W. McGuire    .
     Pernell W. McGuire
2        528 W. Aspen Ave.
     Flagstaff AZ, 86001
3

4        /s/ Eugene R. Ricci     
5        Eugene R. Ricci

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28